NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAWN CLARK,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 16-6781 (SDW)<br><br>**OPINION**<br><br>December 3, 2018 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Dawn Clark's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Daniel Shellhamer's ("ALJ Shellhamer" or "ALJ") denial of her claim for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Shellhamer's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On February 21, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 3, 2009, due to an injured hip and back. (Administrative Record [hereinafter Tr.] 27, 173.) Her claim was denied on July 16, 2012, and again on reconsideration on February 16, 2013. (Tr. 27.) Plaintiff then filed a written request for a hearing on March 15, 2013. (*Id.*) On May 14, 2014, Plaintiff appeared and testified at an administrative hearing before ALJ Shellhamer in Pennsauken, New Jersey. (Tr. 27, 44-45.) Vocational Expert Marian R. Marracco ("VE Marracco") also testified. (*Id.*) Subsequently, ALJ Shellhamer concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset date through the date last insured (i.e., July 3, 2009, through December 31, 2014). (Tr. 27.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty years old at the alleged onset of her disability in 2009. (Tr. 49.) At the administrative hearing, Plaintiff testified that she graduated from high school, attended some college classes but did not graduate, and took classes for her job at Kennedy Memorial Hospital. (Tr. 52.)

Plaintiff's most recent significant employment was as an admissions clerk at Kennedy Memorial Hospital. (Tr. 52, 174.) That position required Plaintiff to walk back and forth between patients' rooms and her computer so that she could input patient information and print out documents for patients to sign. (Tr. 53.) Prior to her job as an admissions clerk, Plaintiff was a receptionist at a doctor's office. (Tr. 53, 174.) As a receptionist, Plaintiff answered phone calls

from patients and entered patient appointments into a computer system. (*Id.*) Plaintiff has not performed paid work since 2009. (Tr. 173.)

   **2. Medical History**

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with her disability claim. The following is a summary of the evidence.

On July 3, 2009, Plaintiff sustained hip and knee injuries after falling into a sinkhole or sandy area. (Tr. 31, 258.) Three days later, Plaintiff went to the emergency department at Kennedy Health System, Washington Township. (*Id.*) Plaintiff experienced pain upon active and passive range of motion of her hip and tenderness to palpation. (Tr. 31, 259.) Plaintiff was diagnosed with a knee sprain and hip sprain, and was discharged with prescriptions for Flexeril, Motrin, and Percocet. (Tr. 31, 258, 261.) Dr. Barry S. Gleimer ("Dr. Gleimer") performed an orthopedic evaluation of Plaintiff on July 8, 2009, and a follow-up examination on July 22, 2009.[1] (Tr. 31, 314-18.) Dr. Gleimer found that, because of her injuries, Plaintiff was unable to return to work until at least September 14, 2009. (Tr. 32, 322.)

Plaintiff's medical history indicates consistent reports of pain from the date of Plaintiff's initial injury in 2009 through 2014. In 2010, Plaintiff began receiving epidural steroid injections to treat her spinal injuries. (Tr. 32, 319-20, 395-96.) Plaintiff had a negative reaction to the second epidural injection, exacerbating her pain. (Tr. 32, 385-90.)

In 2011, diagnostic imaging confirmed no improvement of Plaintiff's lumbar and hip injuries. (Tr. 418-19, 423.) Accordingly, Dr. Charles Nelson ("Dr. Nelson") performed

---

[1] Dr. Gleimer diagnosed Plaintiff with cervical and lumbosacral sprain, lumbar radiculopathy on the left, hamstring strain on the left posterior thigh and knee, mild synovitis of the left knee without internal derangement, and probable lumbar disc herniation versus peripheral sciatic nerve stretch injury. (Tr. 32, 314-15.)

3

arthroscopic surgery with labra debridement and partial synovectomy on September 28, 2011.  (Tr. 32, 501.)  At follow-up visits on October 13, 2011, and December 1, 2011, Plaintiff reported decreased pain and numbness in her hip.  (Tr. 32, 493, 497.)

Post-surgery, Dr. Nelson referred Plaintiff to physical therapy.  (Tr. 32, 448, 498.)  Plaintiff attended one physical therapy session on November 3, 2011, but failed to show for the next five sessions, after which Plaintiff was discharged from the facility.[2]  (Tr. 32, 434-44.)  On March 15, 2012, Plaintiff indicated to Dr. Nelson that, although her hip pain had initially improved post-surgery, it had now worsened.  (Tr. 33, 483.)  Dr. Nelson administered a corticosteroid injection in Plaintiff's left hip, though it did not relieve her pain.  (Tr. 33, 479, 485.)

In 2014,[3] Plaintiff again sought treatment for her cervical spine pain.  (Tr. 33, 578-79.)  On April 14, 2014, Dr. T.J. Citta-Pietrolundo ("Dr. Citta-Pietrolundo") performed a disability evaluation of Plaintiff.  (Tr. 34, 560-70.)  At the time, Plaintiff was taking over-the-counter pain medications, and had limited ability to crouch, crawl, bend, and stoop due to loss of balance and pain in her lower back and hip.  (Tr. 34, 561-63.)  On April 16 and May 27, 2014, Dr. Michael Molter ("Dr. Molter") administered a cervical epidural steroid injection and cervical facet injection, which temporarily improved Plaintiff's pain.  (Tr. 33, 574-76.)

Dr. Juan Cornejo ("Dr. Cornejo") performed a consultative examination of Plaintiff on September 4, 2014.  (Tr. 34, 582-96.)  During the examination, Dr. Cornejo observed that Plaintiff appeared in no acute distress, had no difficulty getting on and off the exam table, could go from lying down to sitting up without difficulty, independently dressed herself, and was comfortable in the seated position.  (Tr. 35, 584-85.)  Dr. Cornejo found that Plaintiff had decreased ranged of

---

[2] Plaintiff also attempted aquatic therapy shortly after her discharge, but twice failed to complete the program.  (Tr. 32, 460-62, 464-65, 477.)
[3] The Administrative Record contains no treatment records from 2013.  This is consistent with Plaintiff's testimony that she stopped seeing Dr. Nelson because "[t]he results w[ere] always the same."  (Tr. 56.)

4

motion of the cervical and lumbosacral spine with tenderness, but still had good range of motion of the upper extremities with no significant sensory or neurological deficits. (*Id.*) Plaintiff also had good range of motion in the left hip, despite tenderness. (*Id.*)

### 3. Function Report

On March 16, 2012, Plaintiff submitted a function report in which she listed her daily activities, which included walking, feeding, and bathing her dog, preparing meals, doing laundry, shopping in stores, handling finances, and socializing with others. (Tr. 31, 192-99.) In the report, Plaintiff complained of difficulty sleeping because of stiffness in her leg and hip. (Tr. 31, 193.) Plaintiff also alleged having trouble putting on her shoes due to difficulty lifting her left leg and difficulty bathing, sitting and standing for prolonged periods, climbing stairs, squatting, walking, bending, kneeling, and completing tasks. (Tr. 30, 193, 196-97.) Plaintiff further indicated that she had no attention difficulties, finished what she started, followed instructions very well, and could handle stress and changes in her routine very well. (Tr. 31, 197-98.)

In a second function report submitted by Plaintiff on September 10, 2012, Plaintiff complained of sleepless nights due to her hip pain. (Tr. 30-31, 215.) Plaintiff further noted that she had difficulty with prolonged sitting or standing, squatting, bending, kneeling, climbing stairs, completing tasks, and concentrating. (Tr. 30-31, 219.) Plaintiff was able to prepare meals, perform chores, care for her dog, undertake personal care activities, drive a vehicle, go out alone, shop in stores, use a computer, handle finances, socialize with others, follow instructions very well, and handle stress and routine changes very well. (Tr. 31, 214-20.)

### 4. Hearing Testimony

ALJ Shellhamer held a hearing on May 14, 2014, during which Plaintiff and VE Marracco testified. (Tr. 27.) At the time of the hearing, Plaintiff lived with her husband and her then 21-

year-old son. (Tr. 49.) Plaintiff testified that she stopped working in July of 2009 due to her hip problems. (Tr. 31, 50-52, 55, 61.) As a result, she had difficulty walking up and down the stairs, felt particularly unsteady, and experienced constant sharp pain from her hip down to her leg. (Tr. 31, 49-50.) Plaintiff also stated that she was unable to stand continuously or sit in one place for more than 20 to 30 minutes, and she could walk for about one to one and a half blocks before needing to sit down. (Tr. 31, 50, 52, 65.) Plaintiff's symptoms would cause her to lay down for two to four hours a day, and caused her to feel depressed. (Tr. 31, 63-64.) Plaintiff testified that she underwent various forms of treatment since her original injury, including physical therapy, injections, and surgery, but none more than temporarily improved her symptoms. (Tr. 31, 55-56, 58.)

VE Marracco testified that the jobs of hospital admissions clerk and medical receptionist are generally performed at the sedentary exertional level. (Tr. 37, 66.) VE Marracco acknowledged that Plaintiff's particular work as a hospital admissions clerk might amount to light work since there was more walking involved when going back and forth to the patients. (*Id.*) VE Marracco also testified that a medical receptionist would be allowed to shift positions and sit or stand as needed, though an admissions clerk might have more stringent postural requirements since the work is performed in an emergency room. (Tr. 37, 66.) VE Marracco further stated that the inability to focus or sustain concentration for a period of two hours would preclude a hypothetical individual, one with similar age, education, and past work experience as Plaintiff, from performing either of those two jobs. (Tr. 37, 67.)

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she

accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

8

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p.[4] An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ

---

[4] On June 14, 2018, the Social Security Administration ("SSA") rescinded SSRs 96-3p and 96-4p because the rulings were considered "unnecessarily duplicative" of SSR 16-3p. Social Security Rulings (SSRs) 96-3p and 96-4p; Rescission of SSRS 96-3p and 96-4p, 83 Fed. Reg. 27816-01 (June 14, 2018). The rescissions do not substantively change the SSA's policies and do not affect this Court's analysis.

proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

In his decision on March 20, 2015, ALJ Shellhamer properly applied the five-step disability test before determing that Plaintiff was not disabled. (Tr. 27-38.) ALJ Shellhamer's findings are supported by substantial credible evidence, and there is no basis for remand or reversal because he appropriately considered all of Plaintiff's medically-supported complaints as evidenced by her consultative visits and medical treatment.

At step one of the five-step test, ALJ Shellhamer determined that Plaintiff did not engage in substantial gainful activity between the alleged onset date of her disability through her date last insured. (Tr. 29); *see* 20 C.F.R. §§ 404.1571 *et seq*. At step two, the ALJ found that Plaintiff's impairments are severe because they significantly interfere with work-related activities and are well documented in the record. (Tr. 29); *see also* 20 C.F.R. §§ 404.1520(c).

At step three, ALJ Shellhamer found that Plaintiff did not have an impairment that meets the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). (Tr. 29-30.) Plaintiff's impairments were compared with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.02 and 1.04.[5] (*Id.*) In considering § 1.02, the ALJ noted that there is no evidence of gross anatomical deformity of the hip, knees, shoulders, elbows, or wrists. (*Id.*) Further, Plaintiff provided no medically acceptable imaging showing joint space narrowing, bone destruction, or ankylosis of the affected joints resulting in an inability to either ambulate effectively or perform fine gross movements effectively. (*Id.*) In considering § 1.04, ALJ Shellhamer determined that Plaintiff's degenerative disc disease was not of sufficient severity based on the listed criteria. (*Id.*) The ALJ specifically pointed to a lack of medical evidence showing neuro-anatomic distribution of pain, limitation of motion of the

---

[5] § 1.02 addresses major dysfunction of a joint and § 1.04 addresses disorders of the spine.

spine, motor loss accompanied by sensory or reflex loss, spinal arachnoiditis requiring the need to change positions or posture more than once every two hours, or an inability to ambulate effectively. (*Id.*)

Thereafter, ALJ Shellhamer followed the proper two-step process to determine Plaintiff's RFC. (Tr. 30-37.) At the first step, the ALJ found that Plaintiff's alleged injuries to her spine and hip could reasonably be expected to cause pain. (Tr. 31.) At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.[6] (Tr. 31.) After carefully considering the evidence, ALJ Shellhamer found that through the date last insured, Plaintiff had the RFC "to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." (Tr. 30.)

In reaching this determination, the ALJ found that the objective medical evidence, opinion evidence, reported daily activities, and Plaintiff's over-the-counter medication regimen did not support an alleged inability to perform work at a sedentary exertional level. (Tr. 37.) ALJ Shellhamer found that Plaintiff's self-reported activities and the objective medical evidence were inconsistent with someone experiencing totally debilitating symptomology. (Tr. 31.) While the evidence shows significant treatment of Plaintiff's left hip and knee problems and continuing symptoms that would preclude prolonged standing and walking, the ALJ found little evidence that demonstrated an inability to work at the sedentary exertional level. (Tr. 31.) In making this determination, the ALJ considered Plaintiff's diagnostic tests and the clinical examinations performed by Dr. Gleimer, Dr. Mohsen Kalliny, Dr. Michael Schettino, Dr. Nelson, Dr. Molter,

---

[6] This Court notes that although SSR 16-3p eliminated the use of the term "credibility" from the SSA's sub-regulatory policy, SSR 16-3p only applies to determinations and decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *2, 13 n.27 (Oct. 25, 2017). The SSA explained, "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." *Id.* at *13 n.27. Because ALJ Shellhamer's decision was issued on March 20, 2015, this Court need not analyze whether the ALJ's decision comports with SSR 16-3p.

Dr. Jeffrey Lee, Dr. Christopher Plastaras, Dr. Ronald Bagner, Dr. Citta-Pietrolundo, Dr. Javad Parvizi, and Dr. Cornejo. (Tr. 31-35, 300-22, 335-36, 358-59, 385-90, 395-96, 402-04, 418-19, 423, 434-48, 457-65, 477, 479, 483-99, 500-05, 515-33, 556-79, 607-11); s*ee supra* Section II.B.2.

ALJ Shellhamer also carefully considered the medical opinions of Disability Determination Services medical consultants Dr. Seung Park ("Dr. Park"), who prepared a Physical Residual Functional Capacity Assessment, and Dr. Isabella Rampello, who affirmed Dr. Park's opinion, (Tr. 35, 71-95), Dr. Cornejo, (Tr. 36, 582-96), Dr. Citta-Pietrolundo, (Tr. 35, 563-70), and Dr. Louis Fuchs, an independent medical expert, (Tr. 36-37, 597-603). ALJ Shellhamer appropriately considered those opinions, assigning more or less weight to those opinions in light of the treatment records. (Tr. 35-37.) In so doing, ALJ Shellhamer acted within his purview to reject medical conclusions that are not supported by clinical evidence. *See* 20 C.F.R. § 404.1527(c)(2) (detailing how medical opinions are weighed); *see also Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012) (explaining that ALJs may choose whom to credit so long as they do not "reject evidence for no reason or for the wrong reason" (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

Given Plaintiff's RFC, the ALJ determined at step four that Plaintiff was capable of performing her prior work as a hospital admissions clerk and medical receptionist. (Tr. 37.) It is clear that ALJ Shellhamer considered the vocational expert's testimony in making this determination. (Tr. 37, 65-68.) Since the ALJ determined at step four that the claimant is not disabled, the ALJ correctly did not proceed to the fifth step of the disability test. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

After properly following the five-step disability test, ALJ Shellhamer determined that Plaintiff is not disabled under the Act. While Plaintiff has real limitations, her limitations do not

13

preclude her from returning to the type of work required by her prior jobs as a hospital admissions clerk and medical receptionist. The ALJ's decision is supported by the substantial credible evidence. The ALJ was within his right to accept or reject findings of doctors and make a legal determination regarding Plaintiff's disability. Plaintiff's focus on "postural" limitations is not a basis for remand given the medical records and the ALJ's findings.

## IV. CONCLUSION

Because this Court finds that ALJ Shellhamer's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

                                                s/ *Susan D. Wigenton*
                                                **SUSAN D. WIGENTON**
                                                **UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties